THE ORD FIRM, P.C.
James K. Ord, III (USB 14007)
P.O Box 16688
Salt Lake City, UT 84116
Telephone: (801) 887-0442
Email: James.Ord@TheOrdFirm.com
*Attorney for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| Trevor Kelley,<br><br>                Plaintiff,<br><br>v.<br><br>A and A Hospitality, LLC<br>*d.b.a.* La Quinta Inn & Suites of Orem,<br><br>                Defendant. | Case No.:<br><br><br>**VERIFIED COMPLAINT**<br>**[JURY TRIAL DEMANDED]**<br><br>Assigned to Honorable |

Plaintiff, Trevor Kelley, by and through his undersigned counsel, hereby alleges, complains, and seeks injunctive relief, declaratory judgement, nominal damages and his attorneys' fees, as follows:

### NATURE OF CASE

1.   This action seeks redress against Defendants in the form of declaratory relief and a permanent injunction to enjoin Defendants' unlawful violation of Title III of the Americans with Disabilities Act[1] (the "ADA" or the "Act"), nominal damages, and also attorney's fees and costs as allowed by the Act[2], as set forth below. Defendants maintain illegal architectural barriers to access on their premises and have failed to make necessary modifications to allow persons with disabilities to fully enjoy the goods and services offered to the general public as required by the

---

[1] 42 U.S.C. §12181 et. seq.
[2] 42 U.S.C. §12205

ADA.[3] It is further believed that Defendant does not have proper and adequate policies and procedures in place as required by the ADA.

2.   On July 21, 1990, the United States Department of Justice issued design standards to be implemented in the construction of new buildings (the "1991 Standard"). These regulations are titled as the ADA Standards for Accessible Design and are codified at 28 C.F.R. Part 36. Appendix A to Part 36 contains the ADA Accessibility Guidelines (referred to herein as "ADAAG"), which are the technical requirements to which buildings constructed on or after January 26, 1991 but before September 15, 2010 must adhere to in order to comply with the ADA.

3.   On September 15, 2010, the Department of Justice revised the ADA Standards for Accessible Design and the ADAAG, which revisions are codified at 28 C.F.R. Part 36, subpart D and Part 1191 (the "2010 Standard"). The 2010 Standard applies to buildings constructed or altered in a relevant manner after March 15, 2012. Buildings constructed or altered on or after September 15, 2010 but before March 15, 2012 must comply with either the 1991 or 2010 Standard.

4.   Even if the non-conforming barriers were constructed prior to 1990, places of public accommodation must comply with the 1991 Standard if compliance is readily achievable.[4]

5.   Any site that has undergone relevant renovations since March 2012 must fully comply with the 2010 Standard, rather than maintaining compliance with the 1991 Standard alone.[5]

6.   Title III of the ADA specifically governs barriers to access in places of public accommodation operated by private entities such as Defendants.

_____

[3] 42 U.S.C. §12182(a).
[4] 42 U.S.C. §12182(b)(2)(A)(iv).
[5] 28 C.F.R. 36.406(a).

7.   Plaintiff alleges that he has actual notice that Defendant has failed to comply with Subchapter III of the ADA, 28 C.F.R 36 and the 2010 Standards of Accessibility Design ("2010 Standards") as more fully alleged below.

8.   Plaintiff alleges that he has no obligation to engage in futile gestures as referenced in 42 U.S.C. §12188(A)(1) and 28 C.F.R. Subpart E.

9.   The duty of compliance with the ADA is not delegable. "[e]ach entity subject to the Americans with Disabilities Act has a nondelegable duty to comply with that law," *see Equal Rights Center v. Niles Bolton Associates,* 602 F.3d 597, 602 (4th Cir. 2010).

10.  Defendant has discriminated against Plaintiff by the following actions and failures to act:

**PARTIES**

11.  Plaintiff re-alleges all allegations heretofore set forth.

12.  Plaintiff, Trevor Kelley, is a natural person who resides in West Valley City, UT.

13.  Plaintiff is a disabled person and a committed individual to advance the time when places of public accommodations will be compliant with the ADA.

14.  Plaintiff has a disability that substantially limits major life activities. Plaintiff's disability stems from being diagnosed with Arthrogryposis Multiplex Congenita, which renders him the inability to walk and has forced himself to rely primarily on a wheelchair for mobility. Additionally, Plaintiff suffers from limited upper body strength and limited use of hands and as resulting in the inability to operate mechanisms that require tight grasping, pinching, or twisting of the fingers and wrist therefore, adding to Plaintiff's "disabled" status. At the time of Plaintiff's visit to Defendant's public accommodation, Plaintiff qualified for and required reasonable accommodations to access and use the public accommodation.

15.  Defendant, A and A Hospitality, LLC d.b.a. La Quinta Inn & Suites of Orem, located at

1100 West 780 North, Orem UT 84058, which is a place of public accommodation ("PPA") pursuant to 42 U.S.C. § 12181(7)(A), which offers public lodging services, *see* 28 C.F.R § 36.104 and a listing of public accommodations in 42 U.S.C. §12181(7).

## JURISDICTION AND VENUE

16.  Plaintiff re-alleges all allegations heretofore set forth.

17.  This Action arises from a violation ADA Title III regulation. This Court therefore, has original jurisdiction over this case or controversy by virtue of 28 U.S.C. §§ 28-1331 and 42 U.S.C. § 12188 and 28 U.S.C. § 1367.

18.  Plaintiff brings this action as a private attorney general who has been personally subjected to discrimination on the basis of his disability, *see* 42 U.S.C. § 12188 and 28 C.F.R § 36.501.

19.  Venue is proper pursuant to 28 U.S.C. § 1391 pursuant to 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 12188.

20.  Venue in this Judicial District is proper under 28 U.S.C. § 1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## STANDING TO SUE JURISDICTION

21.  Plaintiff seeks both retrospective declaratory relief (that Defendant has violated and continues to violate Title III of the ADA) and prospective injunctive relief all as more fully stated below.

22.  As described above, Plaintiff has a disability which substantially limits major life activities. At the time of Plaintiff's visit to Defendant's PPA, Plaintiff qualified for and required reasonable accommodations to access and use the PPA.

23. Plaintiff arrived at Defendant's PPA on the date as described below, by means of a

wheelchair-accessible mobility van.

24. Plaintiff personally visited Defendant's PPA but was denied full and equal access and full and equal enjoyment of the facilities, services, goods and amenities.

25. Plaintiff is a customer of Defendant and visited Defendant's PPA on or about May 23, 2018 to enjoy the goods and services offered at the PPA. Defendant offers goods and services at its PPA without restriction to members of the public who do not suffer from a physical disability.

26. The La Quinta Inn, which is the subject location identified herein, is less than thirty (30) miles and approximately twenty (20) minutes from Plaintiff's home.

27. Completely independent of Plaintiff's personal desire to access the PPA, Plaintiff also acted as a tester for purposes of discovering, encountering, and engaging discrimination against persons with disabilities at Defendant's PPA. Plaintiff intends to visit the PPA regularly to verify compliance or non-compliance with the ADA. In the instances referenced herein, Plaintiff, in his individual capacity and as a tester, visited the Premises, encountered barriers to access at the PPA, engaged and tested those barriers, and suffered legal harm and legal injury and he will continue to suffer harm and injury as a result of the illegal barriers to access and the violations of Defendant set forth herein. Without judicial intervention, Plaintiff will suffer a real and imminent threat of encountering Defendant's accessibility barriers in the near future.

28. With respect to prospective relief, Plaintiff alleges that Plaintiff is suffering a continuing injury or is under a real and immediate threat of being injured in the future all as more fully developed below.

29. Plaintiff avers that Plaintiff intends to visit Defendants' PPA several times per year in the near future but is deterred from doing so while Defendant's PPA violates the ADA as detailed below.

5

## GENERAL ALLEGATIONS

### General Allegation Regarding Disabled People and the ADA

30.   Plaintiff re-alleges all allegations heretofore set forth.

31.   Plaintiff alleges and avers that no notice to Defendants' is required under ADAAG. Many decades have passed since ADAAG's adoption. Defendants' failure to cure the violations contained herein.  Congress did not require disabled people to beg for access— the duty lies with the property owner and business to comply with the law.

32.   Plaintiff alleges and avers that Defendant is or should be aware that, historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem[6].

33.   Plaintiff alleges and avers that failure to abide by the ADA constitutes discrimination against individuals with disabilities. Such discrimination persists in the use and enjoyment of critical public accommodations[7].

34.  Plaintiff alleges and avers that individuals with disabilities, including Plaintiff, continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural barriers, both intended and unintended, failure to enact rules and policies both from an operational standpoint and failure to have rules in place necessary to discover and remove architectural barriers., failure to make modifications to existing facilities, and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, or other opportunities[8].

---

[6] 42 U.S.C. § 12101(a)(2)

[7] 42 U.S.C. §12101(a)(3)

[8] 42 U.S.C. §12101(a)(5)

35.  Plaintiff alleges and avers that census data, national polls, and other studies have documented that people with disabilities, as a group, occupy an inferior status in our society, and are severely disadvantaged socially, vocationally, economically, and educationally[9].

36.  Plaintiff alleges and avers that the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals[10].

37.  Plaintiff alleges and avers that continued existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity[11].

**General Allegations Regarding Voluntary Cessation of Voluntary Remediation**

38.  Plaintiff re-alleges all allegations heretofore set forth.

39.  Plaintiff further avers that any voluntary cessation of Defendant's non-compliance with the ADA may be readily reversed by the reinstatement of the barriers to individuals with disabilities unless said remediation is permanent in nature.

40.  Plaintiff alleges and avers that any voluntary cessation of Defendant's non-compliance with the ADA is inadequate to comply with the ADA where Defendant has not developed policies and procedures necessary to insure continued compliance, regardless of whether remediation of architectural barriers is permanent in nature.

41.  Plaintiff further alleges and avers that partial remediation of barriers or remediation of

---

[9] 42 U.S.C. §12101(a)(6)

[10] 42 U.S.C. §12101(a)(7)

[11] 42 U.S.C. §12101(a)(8)

only a few barriers, and not all barriers that may be discovered that discriminate against Plaintiff and all similarly situated individuals, is violative of the Americans with Disabilities Act and further damages Plaintiff.

42.   Plaintiff further avers that that remediation of barriers that are not permanent architectural barriers and their corresponding non-compliance with the ADA may be readily reversed by the reinstatement of the barriers and cause damages to individuals with disabilities, including Plaintiff.

43.   Plaintiff alleges and avers that any policy that Defendant has, either written or de facto, of piecemeal remediation and/or remediating the bare minimum, only when being reported for violations (either negligent or intentional), instead of full pro-active remediation of all barriers violative of the ADA that affect Plaintiff, and all similarly situated persons, *is discriminatory behavior violative of the ADA.*

44.   Plaintiff alleges and avers that any policy that Defendant has, either written or de facto, of piecemeal remediation and remediating the bare minimum, only when being reported for violations (either negligent or intentional) instead of full pro-active remediation of all barriers violative of the ADA that affect Plaintiff, and all similarly situated persons, *demonstrates that Defendant does not have proper policies and procedures for removal of architectural barriers in place as required by* 42 U.S.C. § 12182(b)(2)(A)(ii), (iii); 28 C.F.R. § 36.304(a) *of the ADA.*

45.   Plaintiff alleges and avers that any policy that Defendant has, either written or de facto, of piecemeal remediation and remediating the bare minimum, only when being reported for violations (either negligent or intentional) instead of full pro-active remediation of all barriers violative of the ADA that affect Plaintiff, and all similarly situated persons, *demonstrates that Defendant has an active policy either written or de facto, of non-compliance with the ADA.*

46. Therefore, injunctive relief should be issued irrespective of Defendant's potential voluntary cessation.

47. Plaintiff reviewed first and third-party lodging websites to book an ambulatory and wheelchair accessible room. Plaintiff was denied equal opportunity to use and enjoyment of a critical public accommodation through Defendant's acts of discrimination and segregation alleged below.

**General Allegations Specific to the Place of Public Accommodation**

48. Plaintiff re-alleges all allegations heretofore set forth.

49. Plaintiff intends to book a room at the Defendant's Hotel once Defendant has removed all accessibility barriers, including the ones not specifically referenced herein, and has fully complied with the ADA.

50. Because of Defendant's denial of Plaintiff's use and enjoyment of a critical public accommodation through Defendant's acts of discrimination and segregation, he is deterred from visiting that accommodation by accessibility barriers and other violations of the ADA.

51. Defendant has denied Plaintiff -

    (a)   The opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations at its hotel.

    (b)   The right to be included in the population at large who benefits from Defendant's hotel without being segregated because his disability.

52. Plaintiff intends to book a room at Defendant's Hotel in the future, but he will likely suffer repeated injury unless and until the barriers of accessibility and ambulatory and wheelchair accessibility barriers have been removed.

53. Defendant's Place of Public Accommodation received its occupancy certificate on or about April 2007. (*see* records of the County of Utah attached hereto as Exhibit "A").

54.  Defendant's Place of Public Accommodation was renovated on (*see* permit office records attached hereto as Exhibit "A")

55.  Defendant's Place of Public Accommodation is required to comply with Subchapter III of the ADA, 28 C.F.R 36 and the 2010 Standards of Accessibility Design ("2010 Standards").

## CONTINUING JURISDICTION

56.  ADA violations which form the subject matter of this Verified Complaint change frequently due to regular maintenance, remodels, repairs, and normal wear and tear.

57.  Defendant's ADA Violations are of the type that can reasonably be expected to start up again, allowing Defendant to be free to return to the old ways' after the threat of a lawsuit had passed.

58.  If one or more ADA violation are cured, Plaintiff alleges that they were cured and timed to anticipate the current lawsuit, and not as a good faith effort to comply with the ADA.

59.  To remedy the violations of 28 C.F.R 36.302(e), Defendant would be required not only to modify all first and third-party lodging websites but would be required to do so truthfully and accurately.

## COUNT ONE
## ARCHITECTURAL BARRIERS
### Violation of Plaintiff's Civil Rights under the ADA

60.  Plaintiff realleges all allegations heretofore set forth.

61.  By virtue of his disability, Plaintiff requires an ADA compliant lodging facility particularly applicable to his mobility, both ambulatory and wheelchair assisted.

62.  On or about May 23, 2018, Plaintiff visited a third-party website, Expedia.com to book a room.

63.  Third-party website disclosed general availability and description of Defendant's Hotel.

64.  Third-party website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs.

65.  Third-party website failed to disclose the following accessibility features in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel and guest rooms meets his accessibility needs:

(a)  Whether accessible routes comply with § 206 of the 2010 Standards; and

(b)  Whether operable parts on accessible elements, accessible routes and accessible rooms comply with §§205 and 803 of the 2010 Standards; and

(c)  Whether any accessible means of egress comply with §207 of the 2010 Standards.

(d)  Whether parking spaces comply with §§208 and 502 of the 2010 Standards; and

(e)  Whether passenger loading zones comply with §§209 and 503 of the 2010 Standards; and

(f)  Whether any drinking fountains comply with §211 of the 2010 Standards; and

(g)  Whether any kitchens, kitchenettes and sinks comply with §§212 and 804 of the 2010 Standards; and

(h)  Whether toilet facilities and bathing facilities comply with §213 of the 2010 Standards; and

(i)  Whether any washing machines and clothes dryers comply with §§214 and 611 of the 2010 Standards; and

(j)  Whether accessible hotel rooms comply with §224 of the 2010 Standards; and

(k)  Whether dining surfaces and work surfaces comply with §§226 and 902 of the 2010 Standards; and

(l)  Whether sales and service elements comply with §227 of the 2010 Standards; and

(m)  Whether any saunas and steam rooms comply with §§241 and 612 of the 2010 Standards; and

(n)  Whether any swimming pools, wading pools and spas comply with §§242 and 1009 of the 2010 Standards; and

(o)  Whether floor and ground surfaces comply with §302 of the 2010 Standards; and

(p)   Whether changes in level comply with §303 of the 2010 Standards; and

(q)   Whether turning spaces comply with § 304 of the 2010 Standards; and

(r)   Whether floor and ground spaces comply with §305 of the 2010 Standards; and

(s)   Whether knee and toes clearances comply with §306 of the 2010 Standards; and

(t)   Whether protruding objects comply with §307 of the 2010 Standards; and

(u)   Whether the reach ranges comply with §308 of the 2010 Standards; and

(v)   Whether the operating parts on accessible features comply with §309 of the 2010 Standards; and

(w)   Whether accessible routes comply with §402 of the 2010 Standards; and

(x)   Whether walking surfaces comply with §403 of the 2010 Standards; and

(y)   Whether doors, doorways and gates comply with §404 of the 2010 Standards; and

(z)   Whether ramps comply with § 405 of the 2010 Standards; and

(aa)   Whether curb ramps comply with §406 of the 2010 Standards; and

(bb)   Whether any elevators comply with §407 of the 2010 Standards; and

(cc)   Whether any platform lifts comply with §410 of the 2010 Standards; and

(dd)   Whether any stairways comply with §504 of the 2010 Standards; and

(ee)   Whether handrails on elements requiring handrails comply with §505 of the 2010 Standards; and

(ff)   Whether the plumbing facilities comply with Chapter 6 of the 2010 Standards with respect to all the following subchapters of Chapter 6: §§ 602 (drinking fountains), 603 (toilets and bathing rooms), 604 (water closets and toilet compartments, 605 (urinals), 606 (lavatories and sinks), 607 (bathtubs), 607 (shower compartments), 608 (grab bars), 610 (seats in bathtubs and shower compartments), and

(gg)   Whether service counters comply with 904 of the 2010 Standards.

66. Thereafter, Plaintiff consulted Defendant's first-party website, wwwLaquintanorthorem.com to determine the information unavailable from the third-party website.

67. First-party website failed to identify and describe mobility related accessibility features and guest rooms offered through its reservations service in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel meets his accessibility needs.

68. In particular, first-party website failed to disclose the following accessibility features in enough detail to reasonably permit Plaintiff to assess independently whether Defendant's Hotel and guest rooms meets his accessibility needs:

(a)   Whether accessible routes comply with § 206 of the 2010 Standards; and

(b)   Whether operable parts on accessible elements, accessible routes and accessible rooms comply with §§205 and 803 of the 2010 Standards; and

(c)   Whether any accessible means of egress comply with §207 of the 2010 Standards.

(d)   Whether parking spaces comply with §§208 and 502 of the 2010 Standards; and

(e)   Whether passenger loading zones comply with §§209 and 503 of the 2010 Standards; and

(f)   Whether any drinking fountains comply with §211 of the 2010 Standards; and

(g)   Whether any kitchens, kitchenettes and sinks comply with §§212 and 804 of the 2010 Standards; and

(h)   Whether toilet facilities and bathing facilities comply with §213 of the 2010 Standards; and

(i)   Whether any washing machines and clothes dryers comply with §§214 and 611 of the 2010 Standards; and

(j)   Whether accessible hotel rooms comply with §224 of the 2010 Standards; and

(k)   Whether dining surfaces and work surfaces comply with §§226 and 902 of the 2010 Standards; and

(l)   Whether sales and service elements comply with §227 of the 2010 Standards; and

(m)   Whether any saunas and steam rooms comply with §§241 and 612 of the 2010 Standards; and

(n)   Whether any swimming pools, wading pools and spas comply with §§242 and 1009 of the 2010 Standards; and

(o)   Whether floor and ground surfaces comply with §302 of the 2010 Standards; and

(p)   Whether changes in level comply with §303 of the 2010 Standards; and

13

(q)   Whether turning spaces comply with § 304 of the 2010 Standards; and

(r)   Whether floor and ground spaces comply with §305 of the 2010 Standards; and

(s)   Whether knee and toes clearances comply with §306 of the 2010 Standards; and

(t)   Whether protruding objects comply with §307 of the 2010 Standards; and

(u)   Whether the reach ranges comply with §308 of the 2010 Standards; and

(v)   Whether the operating parts on accessible features comply with §309 of the 2010 Standards; and

(w)   Whether accessible routes comply with §402 of the 2010 Standards; and

(x)   Whether walking surfaces comply with §403 of the 2010 Standards; and

(y)   Whether doors, doorways and gates comply with §404 of the 2010 Standards; and

(z)   Whether ramps comply with § 405 of the 2010 Standards; and

(aa)   Whether curb ramps comply with §406 of the 2010 Standards; and

(bb)   Whether any elevators comply with §407 of the 2010 Standards; and

(cc)   Whether any platform lifts comply with §410 of the 2010 Standards; and

(dd)   Whether any stairways comply with §504 of the 2010 Standards; and

(ee)   Whether handrails on elements requiring handrails comply with §505 of the 2010 Standards; and

(ff)   Whether the plumbing facilities comply with Chapter 6 of the 2010 Standards with respect to all the following subchapters of Chapter 6: §§ 602 (drinking fountains), 603 (toilets and bathing rooms), 604 (water closets and toilet compartments, 605 (urinals), 606 (lavatories and sinks), 607 (bathtubs), 607 (shower compartments), 608 (grab bars), 610 (seats in bathtubs and shower compartments), and

(gg)   Whether service counters comply with 904 of the 2010 Standards.

69.   Thereafter, Plaintiff called Defendant's Hotel to inquire whether it was compliant with the ADA and suitable for Plaintiff's accessibility needs.

70.   Plaintiff spoke with Hotel reservations clerk, and Plaintiff specifically inquired whether Defendant's Hotel was compliant with the Americans with Disabilities Act and compliant with the specific requirements of accessibility.

71.   Reservations clerk responded that the Hotel was compliant with the Americans with Disabilities Act.

14

72.  Plaintiff subsequently visited the Hotel to independently verify that it was, at least on the outside, suitable to accommodate his disability.

73.  Plaintiff noted that the Hotel was not compliant with the ADA and was replete with accessibility barriers in the details which include, without limitation, the following areas of non-compliance:

(a) Failure to provide the required number of accessible parking spaces as required by 36 C.F.R Part 1191 Appendix B, Guideline 208.2 and are fixed in a way to prevent removal, alteration, or modification because, Plaintiff suffers hardship and is deterred when there is not enough accessible parking spaces in which to park; and

(b) Failure to provide the required number of "van accessible" parking spaces as required by 36 C.F.R Part 1191 Appendix B, Guideline 208.2.4 and are fixed in a way to prevent removal, alteration, or modification because, Plaintiff suffers hardship and is deterred when there is less than the required amount of "van accessible" parking spaces available which renders Plaintiff the inability to park; and

(c) Failure to provide accessible parking space identification signs 60 inches (1525 mm) above the finish floor or ground surface as required by 36 C.F.R Part 1191, Appendix D, Guideline 502.6 and are fixed in a way to prevent removal, alteration, or modification because Plaintiff suffers hardship when he is not able to see signage, recognize where the accessible parking spaces are located, or when the lack of signage fails to discourage parking by patrons without disabilities; and

(d) Failure to provide signs containing the designation "van accessible" that identify van parking spaces as required by 36 C.F.R Part 1191, Appendix D, Guideline 502.6 and are fixed in a way to prevent removal, alteration, or modification because Plaintiff suffers hardship when he is not able to see signage and recognize where the van accessible spaces are located within a parking lot; and

(e) Failure to provide a parking space identified with a sign that includes the International Symbol of Accessibility as required by 36 C.F.R Part 1191, Appendix D, Guideline 703.7.2.1 and are fixed in a way to prevent removal, alteration, or modification because, Plaintiff suffers hardship when he is not able to utilize signage to recognize which parking spaces are accessible to park in and when the lack of signage fails to discourage parking by patrons without disabilities; and

(f)  Failure to make the accessible spaces located on shortest accessible route from parking to an entrance as required by 36 C.F.R Part 1191 Appendix B, Guideline 208.3.1 and are fixed in a way to prevent removal, alteration, or modification because, Plaintiff suffers hardship when he must travel a greater distance than the shortest route to the entrance; and

(g)  Failure to provide directional signs indicating the location of the nearest toilet room or bathing room complying with 603 within the facility shall be provided. Signs shall comply with 703.5 and shall include the International Symbol of Accessibility complying with 703.7.2.1. as required by 36 C.F.R Part 1191 Appendix B, Guideline 216.8 and are fixed in a way to prevent removal, alteration, or modification because, Plaintiff suffers hardship when he is not able to utilize signage to recognize where an accessible lavatory is located; and

(h)  Failure to provide at least one accessible route that connects the facility entrance with the facility's accessible toilet room as required by 36 C.F.R Part 1191 Appendix B, Guideline 206.2.4, Guideline 106.5 and are fixed in a way to prevent removal, alteration, or modification because, Plaintiff suffers hardship when there is not a compliant accessible route with adequate space for him to maneuver his wheelchair to access the toilet room; and

(i)  Failure to provide a tactile characters on signs shall be located 48 inches (1220 mm) minimum above the finish floor or ground surface, measured from the baseline of the lowest tactile character and 60 inches (1525 mm) maximum above the finish floor or ground surface, measured from the baseline of the highest tactile character as required by 36 C.F.R 1191 Appendix D, Guideline 703.4.1 and are fixed in a way to prevent removal, alteration, or modification because, Plaintiff suffers hardship when he is not able to utilize signage to recognize which areas are accessible to utilize; and

(j)  Failure to provide accessible coat hooks located within one of the reach ranges specified in 308. Shelves shall be located 40 inches (1015 mm) minimum and 48 inches (1220 mm) maximum above the finish floor as required by 36 C.F.R § 1191 Appendix D, Guideline 213.3.7 and are fixed in a way to prevent removal, alteration, or modification, because Plaintiff suffers hardship when the coat hook is too high to reach from his wheelchair to use to hang his coat in the restroom; and

(k)  Failure to provide clear floor space, positioned for a forward approach, and knee and toe clearance as required by 36 C.F.R 1191, Appendix D, Guideline 305, Guideline 306, Guideline 606.2 and are fixed in a way to prevent removal, alteration, or modification because, Plaintiff suffers hardship when he is not able to approach the sink and pull underneath the counter/basin to wash his hands; and

(l) Failure to make reasonable modifications in policies, practices, or procedures necessary to accommodate for Plaintiff's disability and provide ongoing full and equal access as required by 42 U.S.C. § 12182(b)(2)(A)(ii), (iii); 28 C.F.R. § 36.304(a).

(*See* Inspection Report attached as "Exhibit B")(*see also* Photos of the ADA violations as "Exhibit C").

74. The duty of compliance with the ADA is not delegable.

75. Plaintiff asks that the Court ORDER immediate expert inspection of the Place of public accommodation to ensure that these facts are gathered before Defendants spoil evidence of any violations. The precise facts surrounding the existence of all barriers including, the barriers currently encountered and all barriers that may be discovered through the discovery process and expert inspection will, in more detail, show the precise ways in which Defendants have violated the ADA. Plaintiff has already conducted a preliminary onsite inspection during which discovering the above violations deterred Plaintiff from further examination of the premises. Therefore, Plaintiff files with this complaint a Motion to immediately ORDER the expert inspection of the facility.

76. As a result of the deficiencies described above, Plaintiff declined to book a room at the hotel.

77. The removal of accessibility barriers listed above is readily achievable.

78. As a direct and proximate result of ADA Violations, Defendant's failure to remove accessibility barriers prevented Plaintiff from equal access to the Defendant's public accommodation.

79. As a result of Defendants' unlawful architecture and failure to remedy, Plaintiff and other disabled persons are subject to ongoing discrimination due to their disability, as well as embarrassment, distress, indignity and limitations to their personal freedom.

80. Plaintiff's knowledge of the barriers described in this Complaint deterred Plaintiff's access to, or full use and enjoyment of the Premises.

81. Plaintiff believes that the Premises has additional architectural barriers on the interior of the Premises that violate ADAAG and which would require additional inspection and access to the interior of the Premises, which barriers include but are not limited to problems with accessibility within the guest rooms and other provided guest amenities such as the Hotel's pool and recreation area, laundry room and dining area.

82. Plaintiff lacks the technical experience and ability to use measuring instruments himself and did not want to disrupt the business operations at the Premises by having his ADA Expert do so without permission from the Defendants and so only exterior measurements were performed at the Premises that would not alarm or interfere with other patrons of the Premises.

83. Plaintiff experienced difficulty with the areas described in this paragraph and therefore has a reasonable belief that they include architectural barriers.

84. Plaintiff avers that his Counsel would like to meet representatives of the Defendants at the Premises to do a full inspection to document other violations of ADAAG should those also exist.

85. Plaintiff intends make a motion for the inspection of real property, seeking a full inspection of the Premises to allow more specific pleading regarding violations of ADAAG not specifically detailed herein.

**WHEREFORE,** Plaintiff prays for all relief as follows:

    A. Relief described in 42 U.S.C. §2000a – 3; and

    B. Relief described in 42 U.S.C. § 12188(a) and (b) and, particularly -

    C. Injunctive relief order to alter Defendant's place of public accommodation to make it readily accessible to and usable by ALL individuals with disabilities; and

D.  Requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by Subchapter III of the ADA; and

E.  For costs, expenses, attorney's fees and nominal damages of USD $1.00; and

F.  All remedies provided for in 28 C.F.R. 36.501(a) and (b).

## COUNT TWO
### Negligence

86.  Plaintiff realleges all allegations heretofore set forth.

87.  Defendant had a duty to Plaintiff to remove ADA accessibility barriers so that Plaintiff as a disabled individual would have full and equal access to the public accommodation.

88.  The duty to comply with the ADA, requires Defendants to be proactive to insure that they are in continual compliance.

89.  Defendant breached this duty.

90.  Plaintiff is damaged by Defendant where Defendant negligently participated in this historical discrimination against Plaintiff.

91.  Plaintiff is damaged by Defendant where Defendant negligently continues to participate in ongoing discrimination against Plaintiff.

92.  Where Defendant negligently discriminates against Plaintiff by failure to abide by the ADA, Defendant has relegated Plaintiff to an inferior status in society, causing damages to Plaintiff.

93.  Defendant's negligent discrimination has worked counter to our Nation's goals of equality, causing Plaintiff damage.

94.  Defendant's breach of duty caused Plaintiff damages including, without limitation, the feeling of segregation, discrimination, relegation to second class citizen status the pain, suffering

and emotional damages inherent to discrimination and segregation and other damages to be proven at trial.

**WHEREFORE,** Plaintiff prays for relief as follows:

    A.  For finding of negligence; and

    B.  For damages in an amount to be proven at trial; and

    C.  For costs, expenses, attorney's fees and nominal damages of USD $1.00; and

    D.  For such other and further relief as the Court may deem just and proper.

**COUNT THREE**
**Negligent Misrepresentation Through Relay of False Facts**

89.  Plaintiff realleges all allegations heretofore set forth.

90.  Defendant made the above representations to the Plaintiff regarding the level of ADA compliance at the facility (*See* ¶¶ 57-82).

91.  Those representations were in fact, not true. (*See* Inspection Report attached as Exhibit "B").

92.  Defendant was in a better position than plaintiff to know the true or falsity of these facts.

93.  Defendant failed to exercise reasonable care or competence in obtaining or communicating the information regarding ADA compliance to Plaintiff both on the websites and telephonically.

94.  Defendant hotel supplied false information to Plaintiff for guidance in Plaintiff's business transaction, to wit: the renting of a hotel room.

95.  Defendant's false statement was made in the course of Defendant's business in which Defendant has a pecuniary interest, to wit: renting of rooms.

96.  Plaintiff justifiably relied on Defendant's false information.

97.  Plaintiff has suffered pecuniary losses as a result of his reliance on Defendant's false information regarding ADA compliance, to wit: he spent time, effort and resources.

98. Defendant either intended to cause injury to Plaintiff or Defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff, to wit: that Plaintiff would face discrimination if the facts regarding the Place of Public Accommodation's accessibility were not true.

99. Plaintiff suffered damages as a result of reliance on Defendant's representations, to wit: he experienced discrimination, and he spent time, effort and resources.

100. Plaintiff therefore claims damages in an amount to be proven at trial.

101. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts.

**WHEREFORE,** Plaintiff prays for relief as follows:

      A.  For finding of negligent misrepresentation; and

      B.  For damages in an amount to be proven at trial; and

      C.  For punitive damages to be proven at trial; and

      D.  For costs, expenses, attorney's fees and nominal damages of USD $1.00; and

      E.  For such other and further relief as the Court may deem just and proper.

## COUNT FOUR
### Negligent Misrepresentation Through Failure to Disclose: Omissions

102. Plaintiff realleges all allegations heretofore set forth.

103. Defendant was under a duty to Plaintiff to exercise reasonable care to disclose matters required to be disclosed pursuant to 28 C.F.R 36.302(e) as more fully alleged above.

104. Defendant was under a duty to disclose matters to Plaintiff that Defendant knew were necessary to be disclosed to prevent Plaintiff to be misled by partial disclosures of ADA compliance as more fully alleged above.

105. The compliance with the ADA is a fact basic to the transaction.

106. Defendant failed to make the necessary disclosures.

107. As a direct consequence of Defendant's failure to disclose, Plaintiff visited the hotel, but did not book a room because of its non-compliance with the ADA.

108. Plaintiff has been damaged by Defendant's non-disclosure.

109. Defendant either intended to cause injury to Plaintiff or defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to Plaintiff, to wit: that Plaintiff would face discrimination if omissions were made regarding the Place of Public Accommodation's accessibility as detailed more fully above.

110. Defendant is liable to Plaintiff for punitive damages in an amount to be proven at trial sufficient, however, to deter this Defendant and others similarly situated from pursuing similar acts.

**WHEREFORE,** Plaintiff prays for relief as follows:

A.  For finding of negligent misrepresentation; and

B.  For damages in an amount to be proven at trial; and

C.  For punitive damages to be proven at trial; and

D.  For costs, expenses, attorney's fees and nominal damages of USD $1.00; and

E.  For such other and further relief as the Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on issues triable by a jury.

/ /

**RESPECTFULLY** submitted by the below signed attorney on this 4th day of September 2018.

*/s/ James K. Ord, III*
JAMES K. ORD, III, ESQ.
P.O. Box 16688
Salt Lake City, UT 84116
Telephone: (801) 997-0442
Email: James.Ord@TheOrdFirm.com
*Attorney for Plaintiff*

State of Utah            )
                         )
County of Salt Lake   )

The the truthfulness of this document was subscribed and sworn to before me, on this 20 day of July, 2018 by Trevor Kelley

Notary Public

23